# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**KEN L. MATTHYS and KAREN MATTHYS,**

          **Plaintiffs,**

-vs-                                        Case No. 6:09-cv-1150-Orl-31DAB

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., COASTAL CAPITAL CORP., and NATIONAL CITY BANK,**

          **Defendants.**

## ORDER

This matter comes before the Court on the Motions to Dismiss filed by defendants Mortgage Electronic Registration Systems, Inc. ("MERS") (Doc. 29) and National City Bank ("NCB") (Doc. 35), as well as the responses (Doc. 36, 37) filed by the Plaintiffs, Ken and Karen Matthys.

### I.  Background

According to the allegations of the Second Amended Complaint, which are accepted as true for purposes of resolving the instant motions, the Plaintiffs applied for a $399,000 loan from Defendant MERS to buy property in Cape Canaveral. (Doc. 28 at 2). On September 2, 2005, after MERS informed them that their application had been approved, the Plaintiffs entered into an adjustable rate note, secured by a first mortgage in favor of MERS. (Doc. 28 at 2-3).

In October 2005, Karen Matthys applied for an equity loan on the same property from Defendant NCB. (Doc. 28 at 3).[1] NCB approved the loan and, on October 7, 2005, Karen Matthys executed a note and (second) mortgage in favor of NCB in the amount of $49,000.[2] (Doc. 28 at 3). Although both Plaintiffs owned the subject property, only Karen Matthys signed the loan documents. (Doc. 28 at 3).

In both instances, the Plaintiffs believed the banks followed certain guidelines and criteria for approving real estate loans, including some requirements that had been set by federal laws or regulations. (Doc. 28 at 4). The banks' employees failed to comply with some of these requirements, however, even going so far as to falsify the Plaintiffs' income on loan applications (without the Plaintiffs' knowledge) so that they would appear to meet underwriting standards. (Doc. 28 at 5).

Plaintiffs filed suit in Brevard Circuit Court on May 27, 2009, and filed an amended complaint on June 4, 2009. The case was removed to this Court on July 6, 2009. (Doc. 1)

---

[1] Confusingly, the Plaintiffs have attempted to define the term "Defendant" as including both MERS and NCB, as well as other entities, even where the context clearly shows the Plaintiffs intended to refer to one entity rather than all of them. (Doc. 28 at 2). For example, at one point, the Plaintiffs assert that some time on or before September 2, 2005, "Defendant informed Plaintiffs" that a particular loan application had been approved. (Doc. 28 at 2). It seems extremely unlikely that one of the Defendant banks would notify the Plaintiffs that their application at *another* bank had been approved. Rather than forcing the Plaintiffs to redraft their allegations to sort all this out, the Court has attempted to interpret the Second Amended Complaint and identify the particular defendants the Plaintiffs meant to refer to.

[2] The amount of this loan is variously described as $49,000 and $49,900 at different points in the Second Amended Complaint. As the precise amount is not needed for resolution of the instant motions, this opinion will utilize the sum most commonly appearing figure – *i.e.*, $49,000.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court must view the complaint in the light most favorable to the Plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Analysis

COUNT I

In Count I, titled "Failure to Disclose," the Plaintiffs claim that the employees of Defendant MERS failed to adequately explain the terms of the adjustable rate note (henceforth, the "Note") which they signed. For example, the Plaintiffs complain that, although the terms of the Note provided that the initial interest rate of 1 % might increase to as much as 9.95 %, a "complicated formula" found at paragraph 3(D) of the Note somehow induced them to think that

their rate would top out at 7.5 %. (Doc. 28 at 6). But the Plaintiffs do not identify any loan terms that somehow differ from what is spelled out in the loan documents. Nor do they identify the source of any duty on the part of MERS to interpret the loan documents for the Plaintiffs. What has been pleaded is not a failure to disclose on the part of the Defendants, but rather a failure to understand on the part of the Plaintiffs. Count I fails to state a claim and will be dismissed.

COUNT II

In Count II, the Plaintiffs contend that agents of Defendant MERS defrauded them by falsifying their income on the loan application, in the absence of which they would not have been approved for the $399,000 loan. Even after setting aside the problem that the "harm" caused by the alleged fraud was the Plaintiffs receiving exactly what they desired, this count still fails to state a claim. The elements of a fraud claim under Florida law are: (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party. *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).

The only false statement at issue here is the statement on the loan application regarding the Plaintiffs' income. Obviously, any alleged falsification of the Plaintiffs' income on that document would have been intended to induce action on the part of *the lender*, rather the Plaintiffs. Further, given that Plaintiffs contend that they were unaware of that falsehood, they could not have relied on it. Count II therefore fails to state a claim.

COUNT III

Count III is a fraudulent misrepresentation claim against Defendant MERS. The Plaintiffs assert that agents of Defendant MERS misrepresented to them "that Plaintiffs could afford the loans." (Doc. 28 at 11). Such a statement is one of opinion, not fact, and therefore it cannot serve as the basis of a fraudulent misrepresentation claim.

COUNTS IV and V

In Count IV, the Plaintiffs allege that Defendant MERS was negligent in evaluating their loan application and mistakenly determined that they qualified for the loan. However, the Plaintiffs have not identified any authority imposing such a duty for the benefit of borrowers under Florida law. In the absence of such a duty, Defendant MERS could not have been negligent. Count V raises the same negligence claim as to Defendant NCB, and fails for the same reason. Both will be dismissed.

COUNTS VI and VII

The gist of these two counts, both titled "Negligent Misrepresentation," is that the defendant banks knew or should have known that the Plaintiffs did not qualify for the loans they sought, but mistakenly informed them that they *were* qualified (by approving the loan), in reliance upon which the Plaintiffs accepted the loans. Again, the Plaintiffs cannot identify any authority that imposes a duty on lenders to, in essence, act as financial advisors or fiduciaries for the benefit of their potential borrowers. They certainly have not pleaded any unusual circumstances that would even arguably cause such an obligation to arise out of this transaction. In the absence of any duty to properly advise the Plaintiffs of their ability to repay the loan, the Defendants' mistaken

approval of loans cannot constitute a negligent misrepresentation to them. Both counts will be dismissed.

COUNT VIII

In this count, titled "Mortgage of National City Bank," the Plaintiffs seek cancellation of the second mortgage on the grounds that, although both of them owned the subject property, only Karen Matthys signed the Note and the second mortgage, and Ken Matthys had no interest in and received no benefit from the loan. (Doc. 28 at 19). Although the absence of one owner's signature may preclude enforcement of a mortgage, the Plaintiffs have not produced (and the Court has not been able to locate) any authority that requires cancellation of a mortgage in such a situation. The authorities located by this Court suggest a contrary result.

For example, under Florida law, some mortgages apply to property acquired by the mortgagor after the creation of the mortgage. *See Fla. Land Inv. Co. v. Williams*, 92 So. 876 (1922). And in *Pitts v. Pastore*, 561 So. 2d 297 (Fla. 2d DCA 1990), a husband who was the sole owner of homestead property occupied by both spouses signed a mortgage on that property. His wife did not sign the mortgage. Article 10, Section 4 of Florida's Constitution prohibits alienation of homestead property by a single spouse. However, the *Pitts* court did not find that the absence of the wife's consent rendered the mortgage void or subject to cancellation. Instead, the court found that the mortgage lien simply did not attach to the property until either the wife joined it or the property lost its status as homestead. *Id.* at 301. By analogy, the absence of the husband's consent in the instant case might prevent NCB from foreclosing the mortgage until circumstances change, but it would not require cancellation or render it void. Count VIII therefore fails to state a claim for cancellation, and will be dismissed.

COUNT IX

The final count, titled "Injunctive Relief," seeks to bar the Defendants from initiating foreclosure proceedings on the subject property. Without deciding the merits, such injunctive relief does not constitute a separate cause of action, and Count IX will be dismissed with prejudice.

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Motions to Dismiss filed by Defendant Mortgage Electronic Registration Systems, Inc. (Doc. 29) and Defendant National City Bank (Doc. 35) are **GRANTED IN PART**. Given the fundamental problems with their legal theories outlined above, it seems unlikely the Plaintiffs can successfully recast their claims to survive a motion to dismiss. However, as this is the first order dismissing their pleading, the Court will permit them a chance to do so (aside from Count IX, for obvious reasons). Accordingly, Counts I through VIII are **DISMISSED WITHOUT PREJUDICE**, and Count IX is **DISMISSED WITH PREJUDICE**. If the Plaintiffs choose to do so, they may file a Third Amended Complaint that cures the deficiencies outlined in this order on or before November 25, 2009. If they fail to do so by that date, the entire dismissal will be converted to one with prejudice.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 10, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party